```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA                       :
                                               :    1:14-cr-00189-PAC-3
    - against -                                :
                                               :    **OPINION & ORDER**
JAMES LYLE,                                    :
        Defendant.                             :
-----------------------------------------------------------------------X
```

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant James Lyle ("Defendant," "Lyle") is a 45-year-old inmate who was sentenced to 120 months in prison after being found guilty by a jury of two counts related to a conspiracy to distribute methamphetamine. He is now incarcerated at Federal Correctional Institution McKean ("FCI McKean") in Pennsylvania and moves in the context of the COVID-19 pandemic for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Specifically, with a date for release to a halfway house set for January 22, 2021 and a projected release date of July 22, 2021, Lyle asks for immediate release to home confinement.

The Government does not resist the Defendant's motion on exhaustion grounds, concedes the presence of "extraordinary and compelling reasons," and rests its opposition solely on an argument that contemplation of the sentencing factors in 18 U.S.C. § 3553(a) point toward denying a sentence reduction. The Government also submits that the fact that FCI McKean is not presently suffering a COVID-19 outbreak also argues against granting compassionate release.

The Defendant's motion for compassionate release is GRANTED. His term of imprisonment is reduced to time served, and Lyle's five-year period of supervised release will commence immediately upon release, with the first six months to be served in home incarceration.

## BACKGROUND

Lyle was charged in an indictment that was filed March 20, 2014 and superseded on September 11, and again on September 30, 2014 (the "Indictment"). Dkts. 2, 35, 42. The Indictment charged Lyle and his co-defendant Michael Van Praagh[1] ("Van Praagh") with a conspiracy to distribute methamphetamine, and Lyle was personally charged with conspiring to distribute and possess with intent to distribute 500 grams and more of substances and mixtures containing methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 ("Count One") and intentionally and knowingly distributing and possessing with intent to distribute 50 grams and more of substances containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B) and 18 U.S.C. § 2 ("Count Three"). Dkt. 42, at 1–3.

In December of 2013 Lyle was apprehended and arrested by New York City police officers who found 480 grams of methamphetamine and $40,000 in the trunk of the car he was driving. Presentence Report ("PSR") ¶ 19. One month later, in January 2014, Lyle and his girlfriend were found by police in a New Jersey hotel room along with 14 grams of methamphetamine, $3,000 in cash, a digital scale, and Ziploc bags. *Id.* ¶ 20. In total, between five and 15 kilograms of methamphetamine were personally attributed to Lyle. *Id.* ¶ 27.

---

[1] Van Praagh was sentenced to 144 months' imprisonment, which he was serving at FCC Lompoc. *United States v. Van Praagh*, 1:14-cr-00189-PAC-1, 2020 WL 3892502, at *1 (S.D.N.Y. July 10, 2020). This Court granted Van Praagh's motion for compassionate release on July 10, 2020 and reduced his sentence to time served with six months of home incarceration as a special condition of his five-year term of supervised release. *Id.* at *6.

Lyle entered a plea of not guilty, and trial proceedings for Lyle and Van Praagh commenced on October 14, 2014.  Minute Entries dated Oct. 7 and 14, 2014.  The trial concluded on October 20, and the jury returned verdicts of guilty for both defendants on all counts that same day.  Minute Entry dated Oct. 20, 2014; Dkt. 63.  Lyle's sentencing was held on March 24, 2015.  The PSR prepared by Probation set out statutory terms of 10 years to life on Count One and five to 40 years on Count Three, Guideline provisions of 151 to 188 months, and recommended a sentence of 151 months.  PSR, at 16.  The Government sought a Guidelines sentence, and Lyle asked for a sentence below that range.  Dkt. 82, at 6; Dkt. 85, at 14–15.

At sentencing, the Court found that a mandatory minimum sentence of 120 months was appropriate.  Sent'g Tr., Dkt. 93, at 11:10–16.  The Court recognized

> the difficulty that Mr. Lyle was encountering with his family and with his job, how he started out as a user and migrated into becoming a dealer, maybe not as big as the [G]overnment suggests, but nonetheless a dealer in methamphetamine which is a serious drug that does an awful lot of damage to society . . . . Sentencing Mr. Lyle to more than 120 months, I don't know what he's going to learn in the 121st month that he hasn't learned in the prior 120 months, so I think the sentence of a mandatory minimum under these circumstances is sufficient to discharge all the requirements of 3553(a).

*Id.* at 10:16–21, 11:11–16.

## DISCUSSION

### I.  Compassionate Release Standard

Generally a court may not modify an imposed term of imprisonment absent statutory authorization.  *United States v. Franco*, 12 Cr. 932 (PAC), 2020 WL 4344834, at *1 (S.D.N.Y.

June 24, 2020). A limited exception to this general rule is provided by 18 U.S.C. § 3582(c)(1)(A), which as amended by the First Step Act of 2018 allows incarcerated individuals to submit a motion for compassionate release on their own behalf. *See United States v. Reiter*, 87-CR-132 (VSB), 2020 WL 4252681, at *2 (S.D.N.Y. July 23, 2020); *United States v. Gluzman*, 7:96-cr-323 (LJL), 2020 WL 4233049, at *14 (S.D.N.Y. July 23, 2020) (stating that the provision gives courts the "independent power to modify an imposed sentence"). Under the amended statute, this Court may grant a motion for compassionate release when the defendant has first appealed a denial of the Bureau of Prisons ("BOP") for such relief or 30 days have lapsed from the receipt of such a request; where "extraordinary and compelling reasons warrant such a reduction;" and after "considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Courts in this District have repeatedly found that "the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States v. Banks*, 16 CR 809 (VM), 2020 WL 4252718, at *2 (S.D.N.Y. July 24, 2020). In examining both the presence of "extraordinary and compelling reasons" and the factors in 18 U.S.C. § 3553(a), courts "look[] to see both that there is a genuine need based in medical fact for a reduction in that specific defendant's sentence, and that releasing the prisoner early will not undo the important social interests expressed in the imposed sentence." *United States v. Kosic*, 18 Cr. 30 (PAC), 2020 WL 3100459, at *2 (S.D.N.Y. June 11, 2020).

## II.     Application

### A.  Exhaustion and Extraordinary and Compelling Reasons

The Defendant states he has exhausted the procedural requirements imposed by the compassionate release statute. Dkt. 114, at 2. Indeed, Lyle filed a request for compassionate release with the warden of FCI McKean on April 5, 2020, which was denied on April 9. *Id.* The Government does not contest the issue, and the Court finds that the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A) have been met.

The Defendant argues that "extraordinary and compelling reasons" are present in his case because he suffers from obesity, diabetes, hypertension, and perhaps most significantly in the face of COVID-19, a hypothyroid autoimmune disease. *Id.* at 2–3. The Government agrees that the conditions cited by the Defendant constitute "extraordinary and compelling reasons" for purposes of 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 118, at 3. The Court independently finds that the standard is met.

### B.  Section 3553(a) Factors

The Government resists a sentence reduction for Lyle, however, on the grounds that a reduction would not recognize the need for the sentence to account for the "nature and circumstances of the offense" and "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment." 18 U.S.C. § 3553(a)(1), (a)(2)(A).

However, the Court finds that both these factors and those the Government omits permit a reduction for Lyle.[2] The Defendant was himself in the grips of the drug he sold, Sent'g Tr.,

---

[2] All defendants who move for compassionate release under 18 U.S.C. § 3582(c)(1)(A) will have committed serious offenses—they are necessarily individuals who have been found guilty of a crime deserving of a term of imprisonment. A serious offense is a necessary precondition to a motion for compassionate release, and on its own cannot disqualify a movant.

Dkt. 93, at 6:7–13, has served the great majority of his imposed sentence, *see Franco*, 2020 WL 4344834, at *3, and is not asking for an "undue windfall that would severely undermine the goals of the sentence this Court imposed." *United States v. Brady*, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020). Lyle writes that he is "not the same person [he] was" at the time of the offense, and that he is "ready to go back to society to take care of [his] family and be a tax-paying citizen who abides by the law." Dkt. 115, Ex. B, at 4–5. He plans to live with his mother in Cornwall-on-Hudson, New York, and regain work as a stagehand when it becomes available. Dkt. 114, at 4; Dkt. 115, Ex. B, at 5.

The Government includes in its arguments as to the 18 U.S.C. § 3553(a) factors that the current absence of infections at FCI McKean cuts against a sentence reduction for Lyle. Dkt. 118, at 4. But these arguments regarding the status of COVID-19 at the Defendant's facility are misplaced—they go more toward whether "extraordinary and compelling reasons" for a reduction exist, an issue the Government has already conceded. All of the cases cited by the Government on this point correctly analyzed the status of FCI McKean in their "extraordinary and compelling reasons" inquiry, not under the 18 U.S.C. § 3553(a) factors. *United States v. Osbourne*, No. 14 Cr. 6136 (FPG), 2020 WL 3969364, at *2–3 (W.D.N.Y. July 14, 2020); *United States v. Mazzo*, No. 17 Cr. 136 (VLB), 2020 WL 3410818, at *2–3 (D. Conn. June 22, 2020); *United States v. Sayles*, No. 16 Cr. 161 (FPG), 2020 WL 3096977, at *3 (N.D.N.Y. June 11, 2020). It is clear that this second step, looking for "extraordinary and compelling reasons," is where the presence or absence of the virus in the defendant's facility is properly considered, not under the 18 U.S.C. § 3553(a) factors. Because the Government has conceded that "extraordinary and compelling reasons" are present here, its arguments about the status of infections at FCI McKean are inapposite.

## **CONCLUSION**

Lyle's motion for compassionate release is GRANTED, and his sentence is reduced to time served. His five-year term of supervised release remains imposed, and the Defendant shall serve the first six months on home incarceration, monitored by technology determined by the Probation Department at the residence approved by Probation. In light of the ongoing pandemic, the Defendant must remain at his approved residence except to seek any necessary medical treatment, in each instance with prior notice and approval by Probation. The Defendant is further required to possess or have access to a telephone that will allow video conferencing with Probation. The Clerk of Court is directed to close the motions at Dkts. 114 and 115.

Dated: New York, New York
      August 6, 2020

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge